NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHALEY STEWART BOWLES,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK LIBERTY, et al.,<br><br>Defendants. | Civil Action No. 11-3529 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

I.  INTRODUCTION

The parties reached a settlement in this premises liability trip-and-fall action and Defendants now move to enforce the settlement. For the reasons set forth below, Defendants' motion to enforce the settlement is GRANTED.

II.  FACTUAL & PROCEDURAL BACKGROUND

On or about June 19, 2009, Plaintiff Mahaley Bowles ("Plaintiff" or "Bowles") was attending a New York Liberty game at the Madison Square Garden when she tripped and fell on a "dangerous condition" on the premises. (Compl. ¶ 12). In June 2011, Plaintiff commenced a lawsuit against the Defendants Madison Square Garden, L.P., (improperly pled as "Madison Square Garden, Inc., Madisons Square Garden") and New York Liberty, a division of Madison Square Garden, L.P., (improperly pled as "NY Liberty") (collectively "Defendants"). (Compl.). All discovery in that matter was conducted fully and multiple case management and settlement conferences were held.

On February 7, 2014, a settlement conference was held before the Hon. Joseph A. Dickson, U.S.M.J. ("Judge Dickson"), where the parties agreed on the record to a settlement for $175,000.

(*See* D.E. No. 41, Transcript of Settlement Before the Honorable Joseph A. Dickson, U.S.M.J., (hereinafter "Transcript of Settlement")). As a result, this Court dismissed the matter without prejudice, (D.E. No. 39), and counsel for Defendants sent a Release to Plaintiff's counsel on the same day for Plaintiff's signature, (D.E. No. 43-2, Cert. of Atty. in Support of Mot. to Enforce Settlement ¶ 7).

On March 11, 2014, Judge Dickson noted on the docket that the Court had received a letter dated February 24, 2014 from Plaintiff addressed to her prior counsel regarding the settlement. (D.E. No. 40). In the February 24, 2014 letter, Plaintiff stated that she was "uncomfortable" agreeing to the $175,000 settlement and instead stated that she "would feel comfortable" settling for over $600,000. (*Id.*). Judge Dickson ordered that if Plaintiff wished to reopen the matter, she had to "make an appropriate application to the Court." (*Id.*). Nevertheless, on March 17, 2014, the Court posted to the docket a revised version of the February 24, 2014 letter (dated March 10, 2014), which Plaintiff sent to her prior counsel and copied to the Court, in which Plaintiff added a request for punitive damages, bringing the amount she "would feel comfortable settling for" to $1.63 million. (D.E. No. 42). In short, Plaintiff refused to sign the Release and instead sought to reopen the matter to obtain a higher settlement amount.

In response to Plaintiff's refusal to sign the Release, on March 20, 2014, Defendants filed this instant motion to enforce the terms of the settlement. (D.E. No. 43). Judge Dickson held a status conference on April 22, 2014, during which Plaintiff advised the Court that she was seeking new counsel. On July 11, 2014, William W. Mandeville, Esq. substituted into the case as Plaintiff's counsel. (D.E. No. 49). After a status conference with this Court on September 11, 2014, (D.E. No. 50), Plaintiff's current counsel filed opposition to the motion on September 18, 2014, (D.E. No. 52), and Defendants replied on September 24, 2014, (D.E. No. 54).

Judge Dickson held a status conference on November 20, 2014 and gave the parties until December 12, 2014 to meet and confer on the motion. On December 11, 2014, Defendants advised via letter that after reviewing a list of medical bills provided by Plaintiff, its position was unchanged and they asked the Court to rule on the motion. (D.E. No. 55). Plaintiff replied, stating that the parties did not meaningfully confer regarding the list of medical bills. (D.E. No. 56).

The motion is now ripe, and the Court resolves Defendant's motion without oral argument pursuant to Fed. R. Civ. P. 78(b).

### III.   LEGAL STANDARD

The New Jersey Supreme Court has repeatedly made clear that settlement agreements are contracts, and that settlements are encouraged and judicially favored. *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). "A settlement agreement between parties to a lawsuit is a contract." *Id.* (citing *Pascarella v. Bruck*, 190 N.J. Super. 118, 124, 462 (App. Div. 1983), *certif. denied*, 94 N.J. 600 (1983)). "Settlement of litigation ranks high in our public policy." *Id.* (citing *Jannarone v. W.T. Co.*, 65 N.J. Super. 472 (App. Div. 1961), *certif. denied*, 35 N.J. 61 (1961)); *see also*, *Peskin v. Peskin*, 271 N.J. Super. 261, 274 (App. Div. 1994), *certif. denied* 137 N.J. 165 (1995) ("It is fundamental that the settlement of litigation ranks high in the public policy of this state.").

Settlement agreements are binding on the parties and basic contract principles apply. "An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis Co.*, 436 F.2d 389, 390 (3d Cir. 1970). A settlement agreement is itself a contract, "separate and independent from the dispute giving rise to the lawsuit which is settled, [to which] New Jersey's basic contract principles of law apply." *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996). "Traditional contract law rules provide that a contract arises

from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms." *Id.* (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992)). "To be enforceable, a contract must also be accompanied by consideration." *Id.* (citing *Friedman v. Tappan Development Corporation*, 22 N.J. 523, 531 (1956)). Indeed, "where the parties make mutual promises to do some future act, 'the consideration of the promise of one party is a promise on the part of the other.'" *Id.* (quoting *Friedman*, *supra*, 22 N.J. at 533).

However, "[d]espite these strict requirements, parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document." *Id.* (citing *Berg Agency v. Sleepworld-Willingboro, Inc.*, 136 N.J. Super. 369, 374 (App. Div. 1975)). "If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed." *Id.* (citing *Moran v. Fifteenth Ward Bldg. & Loan Ass'n*, 131 N.J. Eq. 361, 366, 25 A.2d 426, 430 (Ch. 1942)). "Thus, so long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993); *see also*, *Pascarella*, 190 N.J. Super. at 124 (noting that an agreement to settle a lawsuit, voluntarily entered into, is binding even in the absence of a writing).

Plaintiff has the initial burden of establishing that a contract of settlement was entered into. *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475 (App. Div. 1997). However, "where a contract of settlement is actually held to exist . . . the party seeking to vacate the settlement must show compelling circumstances." *Id.*; *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990) ("In general, settlement agreements will be honored absent a demonstration of fraud or

other compelling circumstances. . . . Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated.") (internal quotations omitted).

## IV. DISCUSSION

Defendants have satisfied their burden of establishing that an enforceable settlement contract exists. At the same time, Plaintiff has failed to show that "compelling circumstances" warrant vacating the settlement contract.

### A. Existence of the Settlement Contract

The Court is satisfied that the parties entered into a binding settlement contract. As noted above, "a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms. . . . Thus, so long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Excelsior Insurance Co*., 975 F. Supp. at 349 (internal citations omitted).

Here, it is undisputed that Bowles was present on two occasions in which settlement conferences were held. And on February 7, 2014, Judge Dickson held a settlement conference during which Bowles explicitly consented to the terms of the settlement on the record. (*See* Transcript of Settlement at 5). In fact, in her opposition brief, Bowles "readily admits to orally, in court and on the record agreeing to the terms [of the settlement] . . . ." (Pl. Opp. Br. at 1). Even if some details were to be "fleshed out" by a writing thereafter, *Excelsior Insurance Co*., 975 F. Supp. at 349, the Court finds that the parties entered into a binding contract: Bowles explicitly accepted the settlement offer and it was accompanied by consideration. *Id.* ("[W]here the parties make mutual promises to do some future act, the consideration of the promise of one party is a promise on the part of the other.") (internal quotation omitted).

### B. The Settlement Contract Should Not Be Vacated

Since the Court finds that a valid contract of settlement exists, the burden shifts to Plaintiff to show why the contract should be vacated. "Clearly, the party seeking to set aside the settlement agreement has the burden of proving . . . extraordinary circumstance sufficient to vitiate the agreement." *Jennings v. Reed*, 381 N.J. Super. 217, 227, 885 A.2d 482, 488 (App. Div. 2005). To apparently show why "compelling circumstances" warrant vacating this settlement contract, Plaintiff contends that there was an "ambiguity or misunderstanding of the parties." (Pl. Opp. Br. at 1). Specifically Plaintiff asserts that "it is difficult to conceive that the Plaintiff was to receive $175,000, less medical costs to date and less attorney fees, etc. . . . The sum alone would leave Plaintiff with an almost negative amount. Surely, this was not the intention of the parties." (*Id.*). In other words, Plaintiff alleges that there was a misunderstanding as to how the medical costs and attorney fees would be satisfied and that this warrants vacating the settlement contract.

First, the Court notes that Plaintiff's opposition brief barely exceeds a single page in length and relies on a single case in support of her argument, which is clearly distinguishable. (Pl. Opp. Br. at 1 (citing *Amatuzzo*, 305 N.J. Super. at 475)). In *Amatuzzo*, the Appellate Division reversed the trial court's order enforcing the settlement as there were facts which seemed to indicate that the defendant had not provided the settlement authority by which the defendant's attorney negotiated the settlement. There was, therefore, a dispute that the defendant had ever agreed to the settlement in that case. As noted above, in this case, Plaintiff "readily admits" that she agreed on the record to the $175,000 settlement amount.

More substantively, Plaintiff has failed to carry her burden of showing "compelling circumstances" by "clear and convincing evidence" which would warrant vacating the settlement agreement. *Nolan by Nolan*, 120 N.J. at 472. First, with respect to Plaintiff's "misunderstanding"

6

that the she was to receive "$175,000, less medical costs to date and less attorney fees, etc." the Court notes that before Plaintiff explicitly accepted the terms of the settlement on the record on February 7, 2014, her counsel stated on the record that he had "discussed at length" the issue of "outstanding medicals" with Plaintiff and counsel made clear that "we're going to take care of [them] . . . ." (Transcript of Settlement, at 4). Additionally, in paragraph one of her February 24 and March 10, 2014 letters to prior counsel, (D.E. Nos. 43-8 and 43-9), Plaintiff acknowledged that she "will walk away with only $100,000." The Court finds that this indicates that Plaintiff knew that the $175,000 figure was not the total amount she would receive and that additional amounts would be subtracted, such as medical costs. Thus, her claim that it was "not the intention of the parties" for Plaintiff "to receive $175,000, less medical costs to date and less attorney fees, etc." is belied by the transcript of settlement and Plaintiff's own statements in the record.

Furthermore, this Court does not find the amount of consideration here to be "grossly shocking to the conscience" to warrant vacating the settlement agreement. Although not explicitly argued by Plaintiff, a generous interpretation of her threadbare opposition could be that consideration was not adequate. However,

> courts will not ordinarily inquire into the adequacy or inadequacy of the consideration underlying a compromise settlement fairly and deliberately made. . . . [W]here there is no showing of "artifice or deception, lack of independent advice, abuse of confidential relation, or similar indicia generally found in the reported instances where equity has declined to enforce, as unfair or unconscionable, an agreement voluntarily executed by the parties," the agreement should be enforced. . . . It is only where the inadequacy of consideration is grossly shocking to the conscience of the court that it will interfere.

*Pascarella*, 190 N.J. Super. at 125 (internal citation omitted).

The level of consideration is not "grossly shocking to the conscience" based on statements made by Plaintiff in the record. In paragraph two of her February 24 and March 10, 2014 letters to prior counsel, (D.E. Nos. 43-8 and 43-9), Plaintiff noted that the initial demand for settlement

7

was $350,000.  The parties ultimately agreed to "$175,000 less medical costs to date and less attorney fees, etc." (Pl. Opp. Br. at 1), which does not shock the conscience of this Court.  "A compromise is the end product of deliberation as to more than injury" and involves the weighing of multiple factors.  *Pascarella*, 190 N.J. Super. at 126.  Indeed, when Plaintiff acknowledged at the February 7, 2014 settlement conference that the $175,000 figure was a "big compromise," Judge Dickson accurately remarked: "That's the way settlements are."  (Transcript of Settlement, at 5).

In sum, the Court finds that Defendants have met their burden of proving the existing of a settlement agreement and that Plaintiff has failed to sustain her burden of showing a compelling circumstance by clear and convincing evidence to warrant overturning the settlement agreement.  *Pascarella*, 190 N.J. Super. at 126 ("The bargain clearly was struck.  If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand.").  Plaintiff's statements in the record and her opposition are more akin to "buyer's remorse" than to "compelling circumstances" which would warrant overturning the settlement agreement.

## V.     CONCLUSION

For the reasons above, Defendants' motion to enforce the settlement is GRANTED.  An appropriate order accompanies this opinion.


s/ *Esther Salas*
**Esther Salas, U.S.D.J.**